Mr. Al-Mahdini, is that correct? Al-Mahdini, my apologies. Good morning, Your Honors. May it please the Court, Yasin Al-Mahdini for Appellant Lightray. In this case, not interpreting standing within the civil forfeiture... ...but the basis for your interlocutory appeal. And I believe your position is that this matter is on interlocutory appeal based on Rule 54B? Correct, Your Honor. Yes. Well, we've taken a close look at that. And the judge ruled from the bench. Then you filed a Notice of Appeal and you listed various reasons for our having jurisdiction over this interlocutory appeal. You did not list Rule 54B. Then the judge entered a final judgment. It's titled Final Judgment, but it doesn't mention Rule 54B. Four days later, you filed a motion for this to be a Rule 54B appeal. The judge never ruled on that motion, and now it's before us. And, of course, under our precedent, he doesn't have to use the magic words, Rule 54B, in his order. But he does have to at least show the intention to allow this appeal under Rule 54B, and it's just not there. So how do we have jurisdiction under Rule 54B? I do believe, Your Honor, that when we moved below for final judgment, we were asking the court to allow a Rule 54B appeal to go forward. And when the court issued the final judgment, we had proposed an order when the court issued the final judgment. I believe that that was indicative of that. Well, but the final judgment was filed on, I believe, the 19th of November, and your motion was filed on the 23rd of November. So your motion was filed after the final judgment. Actually, Your Honor, the final judgment says the 19th, but when the court looks on the docket, and allow me to please go to the docket. It was entered in a few days. There's a dispute. Entry in the day. Yeah. Actually, our motion was filed first, and then the court issued it, but the court seemed to have backdated it. I'm not sure how that occurred, but I didn't know how. But the bigger point is you did have a proposed order that had an adequate Rule 54B judgment. The court didn't just sign that, though. It entered a different document that doesn't make any 54B findings about there's a need for an appeal without any further delay. So that seems to be the problem. And I believe your motion is dated the 23rd, and it's filed on the 23rd, and the order, I believe, was filed on the 19th. Let me take a look at the, Your Honor, if you will. Sure. Your motion's on the 23rd. Yes, Your Honor. Final judgment is signed the 19th. It's entered on the November 28th. Right. So it's entered five days after your motion, but it's signed on the four days before it. Yes, Your Honor, and I believe that because the court issued, we asked for a final judgment to be able to take this appeal, and because the court issued that final judgment, I didn't, I believe that the court may have thought that that was sufficient for us to decide. No, but we have no way of knowing that. There's no clear intention by the district judge that this be a Rule 54B judgment. And again, the final judgment is on the 19th. I believe it's dated the 19th, and your motion is, I believe, dated the 23rd. It is, Your Honor. So, you know, to say to us, well, it was just filed late is just totally wrong and doesn't reflect very well on you. So what basis would we have jurisdiction? If we don't have jurisdiction under 54B, what's the basis for our jurisdiction on this interlocutory appeal? Your Honor, I believe that because final judgment was issued as respecting light ray, then the court would have jurisdiction to at least restore light ray back into the case. Why? What basis? You earlier argued collateral, you ordered a collateral order doctrine. You filed in your notice of appeal. You said an admiralty rule. So what's the basis? If it's not Rule 54B? I would say appeal as of right from final judgment under Rule 4, Your Honor. Also, there's Title 28, United States Code Section 1292A3, which provides appellate jurisdiction for interlocutory decrees such as district courts to judges thereof determining the rights and liabilities of the parties to admiralty cases. Has this ever been designated an admiralty case by the district court? It hasn't been pursued. No, it's a forfeiture case. It just happens to have a yacht involved, but there was other property involved, too. There was, but because there's also a yacht involved, Your Honor, we would say that it is an admiralty case and forfeiture. Didn't your client give up any claim to the yacht, light ray? Well, we have below. We were going to file a motion to have that reconsidered because the way that that was done was not fair. And I wasn't in the case at the time, Your Honor, so we were actually going to file a motion to have that reconsidered. Well, going back to the jurisdictional question, I mean an admiralty case at a minimum would be a case governed by admiralty law. How does admiralty law have any application to this forfeiture proceeding? I mean isn't it just governed by civil forfeiture law? I think supplemental rules of civil forfeiture and admiralty do allow this court to consider it as an admiralty case, especially when there is a yacht or a vessel involved. Are there any cases that say that? I believe in our first notice of appeal. I have that here. Republic of National Bank v. United States. And we also cited Bergeron v. Elliott. Jurisdiction for an electoral and maritime admiralty case exists under 28 U.S.C. 1292-83. And then a civil forfeiture proceeding is an action in rem which will conform as near as may be to proceedings in admiralty. That is Republic National Bank of Miami v. United States. So we do have a case that says that the proceedings here shall conform as near as may be to proceedings in admiralty. Well, on the merits, since your time is dwindling down, how do you get around this? It's really a bedrock principle that shareholders don't have standing to sue in the shoes of the corporation. How do you get around that? Well, Your Honor, there's really – in the standard civil litigation context, standing is narrower. But in the civil forfeiture context, standing is much broader. You don't have to have a legal interest, even an equitable interest. Even a possessory interest qualifies in a different context. But here what we have is – They don't have a possessory interest. They don't have a possessory interest. They actually have an ownership interest. And Congress – As the district court said, I mean, this would mean that say something is seized from General Motors, tens of thousands, if not more, shareholders could come in because they own equity in General Motors. I mean, that just seems to create chaos. Your Honor, I think the court is right there. But the scenario that we're asking for and the carve-out that we're asking for is different. The scenario there would be if General Motors purchased an asset by purchasing an asset-holding company that simply existed for the purpose of holding that asset. But I thought before you said it's just because there's an equity interest that that's what gives you the standing, which that's true of a General Motors shareholder. There is an equity interest, but it's tied to a manifest injustice and a due process issue that can occur if the court doesn't find standing in this particular type of shareholder circumstance. So in a General Motors case, I don't think – What's the manifest injustice? Why doesn't just the actual owner of the assets bring a claim? Okay. So then that's the heart of the issue, Your Honor. Because an innocent owner has to be an innocent owner, has to be a bona fide purchaser after the fact. Right. So if you have an entity that was controlled by some alleged bad actor – That's not innocent. They're not innocent. So now if you purchase the assets, and high-dollar assets are usually many times routinely purchased. But if you purchase the entity that holds the asset, simply holds the asset, then really the innocent owner that exercises dominion and control over that asset is not the nominee that's holding it. That's the entity that was purchased. It's the purchaser. And so what that creates is this conundrum that this entity that was purchased can't be the innocent owner because they were controlled by a bad actor. They weren't innocent, but that's what it is. You've got an innocent owner. So you want a separate structure. You want the benefits of a separate corporate structure with this holding company so that company can't be indicted. It's separate from the company it's owning. There might be tax advantages. There might be civil liability advantages of having a separate corporate structure. But then you basically want to ignore that separate structure when it comes to being able to assert an innocent owner defense. Well, Your Honor, the reason that we'd be able to do that – and I will say that another lens to look at this is Alcan aluminum, where if shareholders suffer a direct injury that can't be redressed by the corporation, then there is a carve-out. Even in the standard civil setting, there's a carve-out for that particular scenario because what would happen is the innocent owner who came in and purchased this asset by purchasing the holding company would complete – the court's door would be completely closed on them, and there wouldn't be an innocent owner defense available. And Congress specifically made it available. In fact – Well, let's talk more directly about the innocent owner defense. That requires an actual ownership, right, not an equitable interest. No, no. It doesn't require actual ownership because – and I will point the Court to our briefing on page 26. The legislative history states that – Let's talk about the statute. What does the statute say? Okay. So I'll start with the statute. The term innocent owner means a person who acquired an interest in the property. And it – it is a – there's a non-exhaustive illustrative list enumerated in 983d6, and that list, you know, it lists lien holders and mortgage holders and so forth. So direct ownership is not required, and 100 percent ownership is not required for an innocent owner defense. And there's case law on this. It's – it is on page 26. It doesn't say you have to have an ownership interest in the specific property sought to be forfeited? No, Your Honor. I think that the law is that the term owner should be interpreted broadly to include a person with a recognizable legal or equitable interest in the property. And shareholders do have an equitable interest. On top of that, shareholder – the parent corporation, which is technically the shareholder,  So tell me the rule we're supposed to apply so that your client wins but General Motors shareholders wouldn't be able to assert a claim. I mean, how do we articulate – we have to set forth a rule that's going to govern future cases. What should that rule say? I believe, Your Honor, if an asset is being purchased by an asset holding – via an asset holding company that exists only for the purpose of holding the asset, well, that's a nominee. And that – in that circumstance, if the court – the court should allow for the innocent owner who purchased that asset in that way to be able to file a claim and assert an innocent owner defense. If the court doesn't do that, then there is no innocent owner defense to ever be able to be made in a case. If someone goes in – if a company goes in and instantly purchases some assets, it doesn't know that those assets may be tainted. And the government files – There's no innocent owner if there's no innocent owner. If the person owning the asset isn't innocent, then of course there's no innocent owner defense. I don't understand why that's so terrible. You have to be an owner and you have to be innocent. And if those two conditions aren't met, there's no innocent owner. Because the innocent owner defense comes in when you're a purchaser for value without knowing. So let's say I have an asset. It's a high-dollar asset. And I'm holding it in the – in a holding company's name. That's all – I control the asset. I just hold it. So all you have to do is just directly purchase the asset and then you own it. But, Your Honor, I understand. But if Your Honor comes in and purchases the asset from me by purchasing the holding company because that's how many of these assets are routinely purchased this way, Your Honor doesn't know that I had purchased the asset or I had bought the asset with any tainted funds, anything. Your Honor comes in, purchases it. If the government files a forfeiture complaint, now the government can seize that asset and you wouldn't have an innocent owner defense. You wouldn't be able to come into the case. But if I had directly bought the asset and not through a holding company that kept my corporate existence separate, I would be able to assert it. Understood, Your Honor. But in terms of transactional freedom, why should companies not be able to buy it in that regard? And why should the door of the court be closed if you buy the asset in that regard? Why should that happen? The innocent owner defense – Because you're doing it in a way that keeps you separate from other – for purposes of other legal consequences. So you also have to bear the burden of being separate when it hurts you not to be an actual direct owner. But you're still an innocent owner. You still paid value, so you're being deprived of your property without due process. It's just a matter of process, Your Honor, because then your property would be taken from you and you would have no process to redress it. And we actually do have a hook in the law to be able to alleviate that because – That's why it all comes down to whether it is that person's property. I do think, I mean, if the court looks at it in terms of a direct injury happening to the person who bought the property, the innocent owner who bought the property, there's a direct injury to that owner that can't be redressed in any other way. So even under the traditional reading, a General Motors shareholder can file a lawsuit if there's a direct injury to them. Under that rubric, the court has that exception. That's what I'm trying to get at, actually. All right. You've kind of exhausted your opening time, but you've preserved your rebuttal time to come back up. Thank you, Your Honor. Thank you, sir. All right. Hear from the government. How do you pronounce your last name? Koo, Your Honor. Koo. Okay. Thank you, sir. Mr. Koo, I see you're from the Department of Justice. Yes, sir. That's right, Your Honor. Well, as I said yesterday, we're always happy to have folks from the Department of Justice here. And why is the Department of Justice here as opposed to a United States attorney? Well, Your Honor, if it pleases the court, we're here because of the particular function that our unit plays at Maine Justice. The money laundering asset recovery section is dedicated to these kinds of cases involving high-level foreign corruption and the recovery, the location, the identification and recovery of those assets. And so that's why. Now, how about addressing jurisdiction? The government doesn't condesce jurisdiction, as I recall. So you've heard our questions to counsel because it appears that having an interlocutory appeal based on Rule 54B is very questionable. How about addressing that and any other basis on which they claim jurisdiction? They claim it under the admiralty rules. They didn't try a collateral order today. Right, Your Honor. And as you're correct to point out, that the government didn't brief this particular issue, had not noticed the potential jurisdictional defect that the panel obviously did take notice of and makes a good point with regard to Rule 54B, that there actually may not be jurisdiction here. And so I take that point seriously. In fact, the government amazingly says it was certified as a final judgment under Rule 54B. That's at page one of your brief. Yes, Your Honor. You didn't help on this brief, did you? No, Your Honor. Well, good for you. So why isn't it a Rule 54B interlocutory appeal? I'm sorry, why is it? Why isn't it a Rule 54B interlocutory appeal? Why is it not? Why is it not? Because, Your Honor, as you pointed out, the court below, the district court, didn't certify it as such. And as you also point out, the government overlooked that in its briefing, and that's a mistake that we made. But I take the jurisdictional point, again, seriously as the panel has identified it. With respect to the admiralty issues, I don't think this is an admiralty case at all. As Judge Costa pointed out, this is a forfeiture case. It is brought under Title 18, 981 and 983, and those are the statutory provisions that govern. It's not a matter of admiralty law. It is a forfeiture case. And so I don't believe there's a basis there for the court's jurisdiction either. So if there's not jurisdiction, then you go through the whole forfeiture, they'd be allowed to appeal after the final judgment? That's correct, Your Honor. After the forfeiture was completed, then there would be a final judgment. And they'd have, what, a claim on the money if they were to prevail? Because, I mean, the assets are going to be sold, presumably. That's correct. Have they already been sold? What's the status? A number of them have been sold, including the yacht and some of the properties in California. Oh, someone bought the yacht? The yacht has been sold. How much did that go for, do you know? I don't believe it's in the record, Your Honor, but it's about $37 million, I think. Now, as I said when an appellant made his argument, I understood from the briefs of the record that the appellant had given up any claim to the yacht. That's correct, Your Honor. The yacht is no longer exactly right. The appellant gave up any claim to the yacht. They said that some other entity was entitled to the yacht. I'm not sure they said some other entity was entitled. They just simply withdrew their claim to the yacht and allowed the United States to take possession of it, to bring it back into U.S. waters, and to sell it, which is what happened. So, Your Honor, I think the law here is fairly clear, and I think Judge Costa, through his questioning, really highlighted what we're talking about today, which is the interest of a corporate shareholder in the corporate's assets. And this Court's own ruling in United States v. Wiley is squarely on point on this question. In United States v. Wiley, the Court directly answered the question, does a corporate shareholder have standing to contest the forfeiture of the corporation's assets? And the answer was no, resoundingly no. And that is fatal to Light Ray's entire position here before us today. Now, Mr. Almodany has suggested that because there is this provision for innocent owners that somehow this ought to give him, bootstrap him into some sort of standing. But he actually, I think, has this backwards. The innocent owner defense, again, Judge Costa noted, is an affirmative defense which really ought to come at the end of the proceedings if the threshold question, first of all, ought to be, does the party have standing? And if so, then that party has the ability to challenge the United States, put the government to its proof, and force the government to make its affirmative case at trial. And if the government is successful in proving forfeitability, only then would the innocent ownership defense even become an issue. At that point, a claimant could assert its innocence as an affirmative defense. But one thing I would also like to point out, Your Honors, is that Light Ray is manifestly not an innocent owner. And I can say that confidently, and I can say that on this record, and I can say that as a matter of law. If we look at the statute which defines innocent ownership, this is 18 U.S.C. Section 983d6, it defines an owner as a person with an ownership interest in the specific property. Light Ray, as a corporate shareholder, does not have any ownership interest in the specific property of its subsidiaries. Now, it goes on to say that there are other kinds of interests that would be protected. These include a leasehold, a lien, a mortgage, a recorded security interest, and so forth. What unifies all of these is that they are secured interests lodged against a specific property. And Light Ray, again, doesn't have that sort of interest. And just to remove any doubt, Congress goes on to say what innocent owner specifically does not include. This is subsection B.1. A person with only a general unsecured interest, which is exactly what a corporate shareholder has, in the property or estate of another, again, which is exactly what a corporate shareholder has, a general unsecured interest in the property of its subsidiary that is specifically excluded by the innocent ownership statute. And so whatever the validity of Light Ray's innocent ownership argument, which I don't believe has much merit at all, nevertheless, Light Ray is manifestly not an innocent owner by the congressional statute. Is Light Ray making other—would they have other defenses besides innocent owner, other claims to the property that they've asserted? I think in their original filing there are some that they have at least asserted. They've asserted that they are the owners of the shell companies, and I believe that's the basis for their stated claim. I'm not aware of any further— Well, I can ask them if innocent owner. Because, I mean, there's other ways people can claim interest in forfeiture property other than just innocent owner, right? Absolutely. And, in fact, there are other parties below. I don't want to prejudice what's going on below, but there are other parties who have asserted innocent ownership claims. The government has not moved to strike those parties. They are in the nature of lien holders, banks who have made loans and then recorded secured interests against the specific assets at issue here. And, in that case, the government has not moved to strike. But what we have here is a corporate shareholder who is attempting to now disregard the doctrine of corporate separateness, a bedrock principle of American corporate law, and take advantage of the assets that its subsidiary holds. And I think Mr. Almodany sort of tips his hand a little bit when he says, well, if I had brought the action in the name of the actual title holders, I wouldn't have an innocent owner defense because he wants to segregate all the bad acts down with the lower subsidiaries. And when the government points out that the assets also happen to be down with the lower subsidiaries, he then tries to punch through the structure and seize the assets with, quote, unquote, innocent hands. He's trying to have it both ways. It seems that it's been inconsistent throughout this proceeding that at one point the government is claiming lack of statutory interest. At another point, the government is claiming lack of Article III stand— I'm sorry, lack of statutory standing. Another point, the government claims lack of Article III standing. Another point, maybe lack of prudential standing. So what is the government's position today? What does Light Ray lack? What kind of standing? Your Honor, the government's position today is that Light Ray lacks prudential standing to appear before this court. You're right. There has been—this argument has been slotted under the Article III rubric. It's been slotted under a prudential rubric and even a statutory rubric, as you just pointed out. The analysis, I think, is the same, which is basically that a corporate shareholder lacks a specific interest. And other courts and other circuits have analyzed that question under the Article III rubric, and they come out the same way. No, they don't have standing. Now, controlling precedent here— The Eighth Circuit. What do you do with the Eighth Circuit case from a couple years ago? The Eighth Circuit case is specifically about Article III standing, Your Honor. And so because the Fifth Circuit interprets standing as a prudential— corporate shareholder standing as a prudential concern, I'm not sure that the Eighth Circuit— And you're getting that from what? Wiley? Where are you getting that the Fifth Circuit treats it as a prudential— That's the Ensley case, Your Honor. Ensley v. Cody Resources, I believe, is the case. And there the court held that Article III standing— the injury in fact factor in Article III standing can be satisfied by a corporate shareholder, but that the prudential rule against asserting a third party's interests was a fatal defect in that case. And so, again, that's just a difference, I think, in where the court finds the defect, but whether it's under Article III or under prudential standing or under statutory standing, I think the defect persists. Now, if we were to say, well, we want to remand this for a clearer findings and conclusions of law because the district court's oral ruling was very, very terse. If we wanted to remand this to the district court for additional proceedings on standing, what state law would we look to? Wouldn't we look to state law? There's no federal corporate law, is there? That's right, Your Honor. It would be the jurisdictions where these entities are registered or were created, and that includes California, that includes New York, and that includes the British Virgin Islands. In the government's briefing, though, we do point out that all of those jurisdictions do follow this doctrine of corporate separateness, and they all have recognized that a corporate shareholder does not have a specific interest in specific corporate property. That seems to be a universal principle of corporate law, not just in the United States, but in all at least common law countries that I'm familiar with, Your Honor. And so remanding it down to the district court I don't think is necessary. I think on the pleadings it's obvious that the kind of interest that Light Ray is asserting as a matter of law is insufficient, and that's the clear holding of United States v. Wiley, that this court I believe was a 1999 decision. And, again, that is specific to the forfeiture context. Wiley says in a forfeiture proceeding, a corporate shareholder doesn't have standing to contest the forfeiture of the corporation's assets. But that's a general principle which is applied throughout any number of cases and occurs again and again in this circuit as well, where shareholders are denied the ability to push the rights of the corporations and the corporation has to bring the action or the shareholder will simply be dismissed for lack of standing. That happens all the time in this circuit and other circuits. There's nothing remarkable about it at all, I would submit. Judge Costes referred to a shareholder for General Motors. Would you agree a shareholder for General Motors would have Article III standing for some complaint about some corporate action by General Motors but would lack either statutory or prudential standing? Your Honor, that seems to me the holding of Inslee, that a corporate shareholder, because an action against a corporation, might diminish the value of the shareholder's stock. It may affect the payment of dividends or the value of the assets that might be distributed at the time the corporation is wound up. Because there is that sort of indirect effect on the shareholder, Inslee says that satisfies the injury and fact test of Article III. But then Inslee goes on to say, nevertheless, under prudential jurisprudence, under prudential standing, it's not appropriate for a party to assert the rights of a third party, which is the effect. I would just note if you're a shareholder of General Motors and your dividend is reduced, it is not just indirect, it's direct. The dividend, yes, Your Honor, the dividend is direct. The shareholder has a direct interest in the dividend, but that doesn't give the shareholder a direct interest in specific assets at General Motors, including factories or equipment or plant or bank accounts, for that matter. The shareholder doesn't have that kind of direct interest in specific assets. I recall from your brief that you did name these three jurisdictions, but state them again for the recording, the American Virgin Islands? British Virgin Islands. British Virgin Islands, New York, and California. Yes, Your Honor. So, Your Honor, I don't want to take up more time than is necessary. Obviously, if there are other questions that I can answer, I'd be happy to do that. But in summation, I think this is a pretty open and shut case. It's a clear black-letter law with respect to corporate separateness. This circuit has held time and time again that corporate shareholders cannot rely on the rights of the corporation in bringing suit, directly applied that principle in Wiley, and I think that closes the door on any argument that the appellant brings, and I would ask that the Court affirm the decision below. Thank you, Your Honor. Thank you. Mr. Buttle. Mr. Honors, thank you very much. Your Honor, I was caught a little off guard. We had confusion. I think everyone had confusion with respect to jurisdiction. The Court pointed out I do have it in my notice of appeal, the collateral order doctrine, that establishes that certain decisions of the district court are final in effect, although they do not dispose of the entire litigation, so there is another basis. But getting to the arguments of counsel, Your Honor. Collateral order, I mean, this is reviewable on final appeal. You'll concede that, right? I mean, on final judgment. I'm not conceding that. I'm just stating all the bases. That one I didn't. I had put it in my notice of appeal, but I didn't state it when the Court was asking me. But, Your Honor, in terms of what the government is arguing, let me just address, first of all, 11 million case, that's the Eighth Circuit case that Your Honor referred to. That case clearly finds that shareholders have Article III standing to contest forfeiture. Even though they don't have a specific interest in the property, what the Court said is neither the letter nor the spirit of the forfeiture statute allows the government a windfall by forfeiting undisputedly innocent proceeds. When the next owner comes in and innocently purchases an asset, that is an innocent owner. They have an ability to assert a defense. That's just due process. So that's the $11 million case, Your Honor. And when that's combined – now, I also want to address Wiley a little bit. The Court was interpreting Title 21-853-N when it was interpreting Wiley. That's a criminal forfeiture statute. The two schemes, they're related, but they're different. And Congress used different languages in the schemes. Congress, in 983, which is what we're concerned with, civil forfeiture says that if you have an interest in the property and whether it's an equitable or legal interest, it qualifies. We've quoted the legislative history on that too. And courts have – this court has found that an equitable interest is sufficient. So that's civil forfeiture. In criminal forfeiture, Congress specifically used different language. They said a legal interest. 853-N says you have to have a legal interest, which implies legal title. And that makes sense because in the criminal forfeiture context, you don't have to show innocent ownership. You only have to show superior ownership. The focus is on ownership because the forfeiture follows conviction in persona. So the third party that's coming in doesn't have to prove innocence because they're presumed innocent because they didn't have a criminal conviction. Whereas in the civil forfeiture claim, the government's powers are extremely broad. All they have to do is file a complaint against an asset. It doesn't have to follow a person. They don't have to get past a grand jury on probable cause. They don't have to file a complaint and get it past a magistrate judge on probable cause. They don't have to prove a criminal conviction before forfeiture proceedings start as they do with criminal forfeiture. They don't have to do any of that. They file a claim so every person, although it's called an innocent owner defense, it should really be dubbed an innocent interest defense because if you have an innocent interest in the property and because ownership is so broadly defined, I would really point the court to this legislative history that we've cited on page 26 of our brief, and it's in a Second Circuit case, and it's also consistent with this court's holding in the Portia Carrera case and the $321,000 case that an equitable interest applies. And so when you have the case of holding companies, there's also this provision in 983D6B3, I believe, that says that a nominee can't be an innocent owner. And the government below argued over and over again that Light Ray was the owner. I'll point the court to ROA 857 where it was the government's position that Light Ray should pay for the upkeep of the yacht because, and this is a quote from their briefing, indeed the case law states that whoever has current dominion over an asset should pay for the upkeep. And so they had, in their proposed order, they had Light Ray paying for it. But Light Ray has given up any claim to the yacht. Well, the reasoning applies equally to all assets, Your Honor, that same reasoning. Not necessarily. Now, as I understand it, Light Ray is in bankruptcy or took bankruptcy? It had filed bankruptcy proceedings, yes. Very quickly after it got into this proceeding. After it got into the forfeiture proceeding? Or I would have to go back and check the record when exactly the bankruptcy was filed. But I do understand that Light Ray had purchased the assets as distressed, their business was to purchase distressed assets. Right. To be able to sell them. Right. And to be able to make a profit. Light Ray is now in bankruptcy. I'm not sure if Light Ray itself is in bankruptcy. Don't you think that's important? I don't believe, I believe that the holding companies are in bankruptcy, but I don't believe Light Ray was in bankruptcy. But I can go back and check that, Your Honor. Light Ray is not in bankruptcy proceedings currently, I can say that. There are no bankruptcy proceedings currently. I'm confident of that. I want to know your time. I have one quick question that the Chief indulged me. Is the innocent owner defense the only claim you have to stopping this forfeiture or getting your own interest in it? Yes, Your Honor. Our entire presence in this case is innocent owner, and it goes back to alkane aluminum. We suffer a direct injury that's different. I understand. I just saw in your original pleading maybe there's some other avenues you were going to go through. It's all about innocence. After the fact, innocently, and we want to be able to make that claim. All right. All right. Thank you, sir. Thank you, Your Honor. Thank you. Counsel, both sides.